**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RICKIE L. HILL,

                                Plaintiff,

   v.

TIMOTHY FILSON, *et al.,*

                            Defendants.

3:16-cv-00644-MMD-CBC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

      This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

      This case involves a civil rights action filed by Plaintiff Rickie L. Hill ("Hill") against Defendants Harold Byrne, Danny Holland and Donald Southworth (collectively referred to as "Defendants").  Currently pending before the Court is a motion for summary judgment filed by Defendants.  (ECF No. 24.)  Hill opposed the motion, (ECF No. 45), and Defendants replied.  (ECF No. 47.)  Having thoroughly reviewed the record and papers, the Court hereby recommends that Defendants' motion for summary judgment be granted.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

      A.     <u>Procedural History</u>

      Hill is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and is currently housed at Ely State Prison ("ESP") in Ely, Nevada.  (ECF No. 4.)  Proceeding *pro se*, Hill filed the instant civil rights action pursuant to 42 U.S.C. § 1983 alleging various claims against Defendants.  (*Id.*)

      Pursuant to 28 U.S.C. § 1915A(a), the Court screened Hill's complaint on October 4, 2017.  (ECF No. 3.)  The Court determined all of the following claims stated a cause of

action: (1) the portions of Counts I, II, and III, alleging failure to protect in violation of the Eighth Amendment against Defendants Southworth, Holland, Byrne, and Doe; (2) the portions of Counts I, II, and III, alleging retaliation in violation of the First Amendment against Defendants Hartwick, Southworth, Holland, Byrne, and Doe; and, (3) the portions of Counts I, II, and III, alleging violation of the Fourteenth Amendment right to equal protection against Defendants Southworth, Holland, Byrne, and Doe.  (*Id.*)  Defendant Filson was dismissed from the action, (*Id.*), and on January 11, 2019, the Court ordered that the claims against Defendants Hartwick and Schultheis[1] also be dismissed.  (ECF No. 77.)

B.    Factual Background Related to Eighth Amendment Failure to Protect

Hill alleges that he is a black, Jewish, sex offender who is being housed in a unit full of white supremacists and gang members.  (ECF No. 4 at 4, 7, 9.)  He alleges that his unit is being opened up and that he will have to mingle with inmates other than his cellmate who he fears will harm him.  (*Id.* at 4-5.)  He goes on to allege that Defendants Holland and Byrne knew of Hill's status and situation and denied his grievances requesting protective custody.  (*Id.* at 8-11.)  Furthermore, Hill alleges that Defendant Southworth knew Hill wanted protective custody but told him there was nowhere safe for him to move.  (*Id.* at 5.)

C.    Factual Background Related to First Amendment Retaliation

Hill alleges that on October 2, 2016, he submitted two emergency grievances seeking "Protective Custody" due to the risks he would face being on an open tier with general population inmates.  (*Id.* at 7.)  He alleges that Defendant Holland refused to process Hill's first emergency grievance because it was not signed and Holland meant to stop Hill from seeking protective custody.  (*Id.* at 8-9.)  Hill also alleges that he submitted an informal grievance, #2006-30-34740, which Defendant Byrne rejected for abuse of the inmate grievance system since Hill had previously grieved the same claims in

---

[1] Randall Schultheis was substituted in for 'John Doe' as a Defendant.  (ECF No. 38.)

1  grievance #2006-30-34738.  (*Id.* at 10,11.)  Hill alleges that Byrne's response failed to

2  address the issue of safety Hill raised, that Byrne knew of the risk of danger to Hill's

3  safety, and that Byrne acted to retaliate against Hill for filing numerous grievances

4  against Byrne.  (*Id.* at 11.)  Finally, Hill alleges that Defendant Southworth knew of Hill's

5  situation and his requests for protective custody, and refused those requests.  (*Id.* at 12.)

6        D.     Factual Background Related to Fourteenth Amendment Equal Protection

7        Hill alleges that he is a black, gay, sex offender, and that he was not moved to a

8  safe tier or protective custody, despite numerous requests.  (*Id.* at 11.)  He alleges that

9  similarly situated inmates only needed to make a verbal request to be taken out of a

10  potentially unsafe unit, therefore he was discriminated against.  (*Id.*)  Furthermore, Hill

11  alleges that no other similarly situated inmates who seek protective custody are left in

12  the general population.  (*Id.* at 9.)  Finally, Hill alleges that Defendants knew of Hill's

13  situation, and his requests for protective custody, yet refused those requests.  (*Id.*)

14        E.     Defendants' Motion for Summary Judgment

15        On March 26, 2018, Defendants filed a motion for summary judgment.  (ECF No.

16  24.)  In the motion, Defendants argue: (1) Defendants were not deliberately indifferent to

17  serious threats to Hill's safety and had taken all available measures to protect him; (2)

18  the grievances were denied because Hill was already in protective custody not as

19  retaliation for Hill's use of the grievance system; (3) Hill was already in protective

20  custody and therefore was not discriminated against on the basis of membership of a

21  protected class; and, (4) in the alternative, Defendants are entitled to qualified immunity.

22  (ECF No. 24 at 1-11.)

23        In response, Hill filed a motion in opposition arguing that summary judgment is

24  inappropriate because: (1) Federal Rule of Civil Procedure 56(e) requires Defendants to

25  submit declarations outlining whether they agree with the allegations in the complaint,

26  which they failed to do; (2) ESP does not have protective custody and he wants to be in

27  protective custody, not protective segregation; (3) two incidents occurred at ESP where

28

3

1  sex offenders were brutally attacked by other inmates; and, (4) Defendants Southworth

2  and Byrnes denied Hill's grievances and are therefore liable.  (ECF No. 45 at 1-5.)

3         In reply, Defendants argue that: (1) they did not need to provide supporting

4  declarations from each Defendant asserting whether they agreed with Hill's allegations;

5  and, (2) Close General Population Level 2, where Hill was housed, is protective custody

6  wherein  Hill did not have access to the outside yard, canteen, lunchroom, and tier, and

7  he was prevented from interacting with inmates other than his cellmate.  (ECF No. 47 at

8  1-6.)

9  **II.    LEGAL STANDARD**

10        Summary judgment allows the court to avoid unnecessary trials.  *Nw. Motorcycle*

11 *Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly

12 grants summary judgment when the record demonstrates that "there is no genuine

13 issue as to any material fact and the movant is entitled to judgment as a matter of law."

14 *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify

15 which facts are material.  Only disputes over facts that might affect the outcome of the

16 suit under the governing law will properly preclude the entry of summary judgment.

17 Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v.*

18 *Liberty Lobby*, 477 U.S. 242, 248 (1986).   A dispute is "genuine" only where a

19 reasonable jury could find for the nonmoving party.  *Id.*  Conclusory statements,

20 speculative opinions, pleading allegations, or other assertions uncorroborated by facts

21 are insufficient to establish a genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509

22 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th

23 Cir. 1996).  At this stage, the court's role is to verify that reasonable minds could differ

24 when interpreting the record; the court does not weigh the evidence or determine its

25 truth.  *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw.*

26 *Motorcycle Ass'n*, 18 F.3d at 1472.

27        Summary judgment proceeds in burden-shifting steps.  A moving party who does

28 not bear the burden of proof at trial "must either produce evidence negating an essential

4

element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

5

1

2       **III.    DISCUSSION**

3               A.    Eighth Amendment Failure to Protect

4               Under the Eighth Amendment, prison conditions should not "involve the wanton

5       and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the

6       crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct.

7       2392, 69 L.Ed.2d 59 (1981).   Although prison conditions may be, and often are,

8       restrictive and harsh, prison officials "must ensure that inmates receive adequate food,

9       clothing, shelter, and medical care, and must 'take reasonable measures to guarantee

10      the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128

11      L.Ed.2d 811 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S.Ct. 3194,

12      82 L.Ed.2d 393 (1984)).

13              "[P]rison officials have a duty . . . to protect prisoners from violence at the hands

14      of other prisoners." *Farmer*, 511 U.S. at 833 (citations and quotations omitted).

15      "Having incarcerated 'persons [with] demonstrated proclivity[ies] for antisocial criminal,

16      and often violent, conduct,' having stripped them of virtually every means of self-

17      protection and foreclosed their access to outside aid, the government and its officials

18      are not free to let the state of nature take its course." *Id.* (internal citations omitted).

19      "Being violently assaulted in prison is simply not 'part of the penalty that criminal

20      offenders pay for their offenses against society." *Id.* at 834 (citing *Rhodes*, 452 U.S. at

21      347).

22              To establish a violation of this duty, the prisoner must establish that prison

23      officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*,

24      511 U.S. at 834; *see also Labatad v. Corrections Corp. of America*, 714 F.3d 1155,

25      1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir.

26      2002)).    Under the deliberate indifference standard, a violation of the Eighth

27      Amendment is only found when an objective and subjective component are met. *Id.*;

28      *see also Clement v. Gomez*, 298 F.3d 989, 994, 353 U.S. App. D.C. 205 (9th Cir. 2002).

1    The objective standard requires that "the deprivation alleges must be 'sufficiently
2  serious.'"  *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111
3  S.Ct. 2321, 115 L.Ed.2d 271 (1991).  The plaintiff must prove that he was harmed by
4  the indifferent actions, though the harm need not be substantial.  *Jett v. Penner*, 439
5  F.3d 1091, 1096 (9th Cir. 2006).  "What is necessary to show sufficient harm for the
6  purposes of the Cruel and Unusual Punishment Clause depends on the claim at issue."
7  *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  "The
8  objective component of an Eighth Amendment claim is . . . contextual and responsive to
9  contemporary standards of decency."  *Id.* at 8.

10    The subjective element considers the defendant's state of mind and whether the
11  plaintiff was harmed. Only where a prison "official 'knows of and disregards an
12  excessive risk to inmate health and safety'" is the subjective element of the test
13  satisfied.  *Hallett vs. Morgan*, 296 F.3d 732, 745–46 (9th Cir. 2002); *Shapley v. Nev. Bd.
14  of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam) (quoting
15  *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)).  The conduct must consist of
16  "more than ordinary lack of due care."  *Farmer*, 511 U.S. at 835.  Not only must the
17  defendant prison official have actual knowledge from which he or she can infer that a
18  substantial risk of harm exists, but he or she must also draw that inference."  *Id.* at 837.
19  The standard lies "somewhere between the poles of negligence at one end and
20  purpose or knowledge at the other[,]" *id.* at 836, and does not include "accidental or
21  unintentional failures to provide adequate medical care . . . ," *Estelle v. Gamble*, 429
22  U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

23    Hill claims that is in danger of serious bodily harm from white supremacists and
24  South Side gang members due to his status as a black, Jewish, gay, sex offender.
25  (ECF No. 4 at 4, 7, 9.)  He claims he will have to interact with inmates other than his cell
26  mate because his unit is being opened up.  (*Id.* at 4-5.)  Furthermore, he claims that
27  Defendants knew of this danger and were deliberately indifferent to it, refusing to
28  transfer him to protective custody.  (*Id.* at 4-11.)  Defendants argue they have not been

1   deliberately indifferent to a serious risk to Hill's health and safety. (ECF No. 24 at 4-5.)
2   Instead, Defendants maintain that they have been responsive to any threat to Hill's
3   health and safety. (*Id.*) Defendants argue that they have taken reasonable steps to
4   protect him by classifying him as close custody where he is in protective segregation
5   and not permitted contact with inmates other than his cellmate, including his perceived
6   enemies. (*Id.*) In his opposition, Hill argues that close custody and protective
7   segregation are not the same as protective custody and that he knows of a sex offender
8   inmate who was stabbed by an "Arian Warrior".[2] (ECF No. 45 at 1-6.)

9       Here, Defendants do not dispute that Hill faces a substantial risk of serious harm
10  if he comes into contact with white supremacists or South Side gang members. Rather,
11  Defendants insist that they responded reasonably to that risk and that Hill was already
12  in protective custody. (ECF No. 24 at 4-5.) The undisputed evidence shows that while
13  housed at ESP, Hill has been celled in either close custody or disciplinary segregation.
14  (*Id.* at Exs. A, pp. 1-3; F, pp. 3, 7.) In his confinement, Hill was celled with one other
15  close custody inmate whom he requested as a cellmate (ECF No. 4 at 4), and has been
16  precluded from face-to-face contact with any other inmates. (ECF No. 24 at Ex. B, pp.
17  2-3.)

18      Hill continuously requested that he be transferred to protective custody, or to
19  another facility (ECF No. 24 at Exs. E; F); however, the evidence in the record
20  established that Hill was sent to ESP due to his extensive disciplinary record and was
21  informed that he did not qualify for transfer. (ECF No. 45 at Ex. 1, p. 7.)

22      Prison officials must be given "wide-ranging deference in the adoption and
23  execution of policies and practices that in their judgment are needed to preserve
24  internal order and discipline to maintain institutional security." *Bell v. Wolfish*, 441 U.S.

25  _____

26  [2]    Hill also describes two incidents in which sex offender inmates were assaulted by
    other inmates at ESP. (ECF No. 45 at 3.) However, the Court cannot consider Hill's
27  reference to the first attack because his allegations are conclusory and are not
    supported by any corroborating evidence such as a declaration or affidavit. *National
28  Industries, Inc. v. Republic National Life Insurance Co.*, 677 F.2d 1258, 1267 (9th Cir.
    1982); *British Airways Bd. V. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978).

520, 546-47, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *see also Turner*, 482 U.S. at 87-91. Here, Defendants had legitimate penological reasons for housing Hill at ESP.  (ECF No. 45 at Ex. 1, p. 7.)  Moreover, while he was housed at ESP, the evidence in the record establishes Defendants took reasonable steps to ensure Hill's safety.  Hill was under a protective custody classification.  Although prison officials refer to it as "protective segregation" rather than "protective custody" the two serve the same purpose; to protect the inmate from serious risks to health or safety.  (ECF No. 45 at Ex. 1, p. 7; ECF No. 24 at Ex. F, p. 3, 7.)  For example, Hill did not have access to the outside yard, canteen, lunchroom, and tier.  (ECF No. 24 at Ex. B, pp. 2-3.)  He was prevented from interacting with inmates other than his cellmate.  (*Id.*)  Additionally, he was under escort whenever he was outside of the unit.  (*Id.*)  At no time did Hill come face-to-face with general population inmates, nor will he as long as he is classified as close custody level 2 and is in protective custody.  (*Id.*)

Furthermore, while Hill alleges he is aware of another similarly situated inmate being attacked at ESP (ECF No. 45 at 6), there is no evidence in the record to suggest that Hill has been attacked or threatened by white supremacists or South Side gang members. Defendants took reasonable precautions to ensure Hill's safety, therefore the Court recommends that summary judgment be granted as to Hill's claim that Defendants knew of and disregarded a substantial risk of serious harm to Hill.

B.    First Amendment Retaliation

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action

1    did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 4-8

2    F.3d 559, 567-68 (9th Cir. 2005).

3            Federal courts were not created to supervise prisons, but to enforce the

4    constitutional rights of all persons, including prisoners.  "We are not unmindful that

5    prison officials must be accorded latitude in the administration of prison affairs, and that

6    prisoners necessarily are subject to appropriate rules and regulations."  *Cruz v. Beto*,

7    405 U.S. 319, 321, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1982).  But prisoners, like other

8    individuals, have the right to petition the government for redress of grievances, which

9    includes the First Amendment right to file grievances against prison officials and to be

10   free from retaliation for doing so.  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

11   "Of fundamental import to prisoners are their First Amendment 'rights to file prison

12   grievances . . .'"  *Rhodes*, 408 F.3d at 567 (quoting *Bruce v. Yist*, 351 F.3d 1283, 1288

13   (9th Cir. 2003)).  "[B]ecause purely retaliatory actions taken against a prisoner for

14   having exercised those rights necessarily undermine those protections, such actions

15   violate the Constitution quite apart from any underlying misconduct they are designed to

16   shield."  *Id.*

17           Hill claims that Defendants retaliated against him by refusing to transfer him to

18   protective custody for exercising the protected conduct of filing grievances against

19   prison officials.  (ECF No. 4 at 7-12.)  Defendants argue that each of the grievances

20   was denied on because Hill was already in protective custody.  (ECF No. 24 at 5-6.)

21           A review of the records shows that the each of the grievances were denied

22   because Hill was already in protective custody.  The emergency grievance was denied

23   by Holland not to prevent Hill from entering protective custody but because Hill was

24   already in protective custody.  (ECF No. 24 at Ex. D; ECF No. 4 at 8-9.)  Grievance #

25   2006-30-34740 was denied by Defendant Byrne for "abuse of inmate grievance

26   procedure" because the specific claim or incidents had previously been filed in

27   grievance # 2006-30-34738.  (ECF No. 24 at Ex. E, p. 3.)  Grievance # 2006-30-35102

28   was denied by Defendant Southworth because Hill was already classified as close

1   custody level 2 and in protective custody.  (*Id.* at Ex. F, p. 3.)  Grievance # 2006-30-

2   35102 was denied by Defendant Byrne because Hill was currently being housed in

3   disciplinary segregation and was subject to the same regulations as he was in

4   protective custody.  (*Id.* at Exs B, p. 2-3; F, p. 7.)

5       As already noted above in section A, Hill was housed in a form of protective

6   custody at all times relevant to the pending action. Therefore, the denial of the

7   grievances was proper and there is no admissible evidence that establishes these acts

8   were taken to retaliate against Hill for exercising his protected right to file grievances.

9   As such, the Court recommends that summary judgment be granted as to Hill's claim

10  that Defendants retaliated against him for filing grievances.

11      C.    Fourteenth Amendment Equal Protection

12      "The Equal Protection Clause requires the State to treat all similarly situated

13  people equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citing *City of*

14  *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313

15  (1985)).  "In the prison context, however, even fundamental rights such ss the right to

16  equal protection are judged by a standard of reasonableness – specifically, whether the

17  actions of prison officials are 'reasonably related to legitimate penological reason.'"

18  *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (citing *Turner v. Safley*, 482 U.S.

19  78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)); *Jordan v. Gardner*, 986 F.2d 1521, 1530

20  (9th Cir. 1993).

21      The preliminary inquiry in an equal protection claim is identifying the plaintiff's

22  relevant class, which is "comprised of similarly situated persons so that the factor

23  motivating the alleged discrimination can be identified." *Furnace v. Sullivan,* 705 F.3d

24  1021, 1030 (9th Cir. 2013) (internal quotation omitted).  Then "a plaintiff must show that

25  the defendant acted with an intent or purpose to discriminate against him based upon

26  his membership in a protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir.

27  2003). Because the claim requires proof of intentional discrimination "[m]ere

28  indifference" to the unequal effects on a particular class does not establish

discriminatory intent. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

Hill claims that he is a black, gay, Jewish, sex offender, and that he was not moved to a safe tier or protective custody, despite other similarly situated inmates being moved.  (ECF No. 4 at 11.)  Hill claims that no other similarly situated inmates who seek protective custody are left in the general population.  (*Id.* at 9.)  Defendants claim that they did not discriminate against Hill because he was not left in general population and was already in protective custody.  (ECF No. 24 at 7.)

Although it is unclear which protected class Hill is claiming he was discriminated under – race, sexual orientation, or religion – the Court need not reach that determination because Hill was not discriminated against.  As discussed above in Section A, Hill was housed in a form of protective custody at all times relevant to the pending action.  Hill was not left in general population.  (ECF No. 24 at Exs. A, pp. 1-3; B, pp. 2-3; C, pp. 2-3.)  Therefore, this Court recommends that summary judgment be granted as to Hill's claims that Defendants discriminated against him by not placing him in protective custody, while placing other similarly situated inmates in protective custody.

## IV.   OTHER PENDING MOTIONS

In light of this Report and Recommendation dismissing all of Hill's claims, Hill's motion for preliminary injunction (ECF No. 59), motion to file an amended preliminary injunction (ECF No. 61), motion to extend copy work (ECF No. 71), and Defendants' motion to strike (ECF No. 75) are moot, and the Court recommends that they be denied on that basis.

## V.   CONCLUSION

Based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be granted.  The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and

1  Recommendation within fourteen days of receipt.  These objections should be entitled
2  "Objections to Magistrate Judge's Report and Recommendation" and should be
3  accompanied by points and authorities for consideration by the District Court.

4        2.     This Report and Recommendation is not an appealable order and any
5  notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the
6  District Court's judgment.

7  **VI.    RECOMMENDATION**

8        **IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary
9  judgment (ECF No. 24) be **GRANTED**;

10        **IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close
11  this case; and

12        **IT IS FURTHER RECOMMENDED** that Plaintiff's motion for preliminary
13  injunction (ECF No. 59), motion to file an amended preliminary injunction (ECF No. 61),
14  motion to extend copy work (ECF No. 71), and Defendants' motion to strike (ECF No.
15  75) be **DENIED** as moot.

16        **DATED**: February 1, 2019.

17

18  _____
19  **UNITED STATES MAGISTRATE JUDGE**

20

21

22

23

24

25

26

27

28